O

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| SHERI CASH, Individually and on behalf of all those similarly situated, | § § § § § | |
| Plaintiff, | | |
| v. | § § | CIVIL ACTION NO. H-04-0932 |
| ALLIED INTERSTATE, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiff, Sheri Cash's ("Cash"), Motion for Partial Summary Judgment (Dkt. #14) and Defendant, Allied Interstate, Inc.'s ("Allied"), Motion for Summary Judgment (Dkt. #28). After considering the parties' arguments and the applicable law, the Court is of the opinion that Cash's motion should be DENIED, and Allied's motion should be GRANTED in part and DENIED in part.

### Factual and Procedural Background

This case involves alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). The following facts are largely undisputed. Cash is a resident of Houston, Harris County, Texas. After becoming ill, Cash received medical treatment at Memorial Hermann Hospital ("Memorial") in March 2002. Cash incurred a debt for this medical treatment in the amount of at least $370.00 under account number 0357994682085. As a result of non-payment of this debt, Memorial assigned Cash's debt to Allied, which is a national debt collection agency in the business of collecting consumer debts from individual customers. Although Allied apparently sent two previous collection letters that Cash either did not receive or discarded without opening, it is undisputed that Allied sent a third collection letter on November 28, 2003, which Cash did receive

and open. In pertinent part, the letter at issue read as follows:

FINAL NOTICE

As a result of your failure to pay the above account, we are recommending to our client that further actions be taken. These actions may include referring this matter to an attorney or reporting this debt to credit reporting agencies.

We highly recommend that you take this final opportunity to resolve this matter before further action is taken. Please remit balance in full within 10 days to:

> MEMORIAL HERMANN HOSPITAL SYSTEM AND
> CONTINUING CARE CORPORATION
> P.O. BOX 203197
> HOUSTON, TX

Please reference your patient account number on your check or money order. Payment may be charged to your credit card by completing the form below.

If payment in full has been made, please disregard this notice. If you have any questions concerning your account, contact us immediately at [telephone numbers].

Se encuentran representantes bilingues. Por favor de llamar.

We are a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

Sincerely,
[Allied Representative]

After receiving this letter, Cash has indicated that it was her belief that "Allied or Memorial Hermann Hospital were going to send the medical bill to an attorney and sue [her]." Approximately 20 days later, Cash contacted Allied regarding her account and indicated that an attorney named Mark Sanders was handling her account. Allied requested that Cash have her attorney send it a Letter of Protection. Allied received no response. In March 2004, Matthew Probus contacted Allied on behalf of Cash to indicate that he would be handling her account. Thereafter, not having received a Letter of Protection or any further communication regarding Cash's debt, Allied returned Cash's account to

2

Memorial with a disposition code of "UR." The disposition code of "UR," which is one of three codes used by Allied in returning accounts to Memorial after the issuance of the third and final collection letter, indicates to Memorial that the account should be forwarded to a secondary bad debt agency. The other two disposition codes are "JU" and "EX." The code "JU" indicates that the account should be forwarded to a company named Juristec, which will review cases for possible legal action. "EX," on the other hand, signifies that the account should be referred to Memorial's in-house collection agency.

On March 8, 2004, Cash commenced this lawsuit against Allied alleging violations of §§ 1692e(5) and 1692e(10) of the FDCPA. Cash then filed her Motion for Partial Summary Judgment on October 6, 2004 seeking a declaratory judgment regarding Allied's alleged violations. After responding to Cash's motion, Allied filed its Motion for Summary Judgment on December 20, 2004, to which Cash has responded.

### Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001); *see also Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

**Discussion**

The issues raised in the parties' respective motions are whether Allied's collection letter violates 15 U.S.C. § 1692e(5) and (10). Section 1692e provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute, however, goes on to expressly prohibit certain debt collector conduct. In particular, § 1692e(5) sets forth that "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken" constitutes a violation. Additionally, under § 1692e(10), "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" is prohibited.

The Fifth Circuit has addressed the question of "from whose perspective the communication is analyzed in determining whether" it is false, deceptive, or misleading. *See Peter v. GC Servs. L.P.*, 310 F.3d 344, 349 n.1 (5th Cir. 2002). The Court has recognized two standards: the "least sophisticated consumer" and the "unsophisticated consumer." *See Peter*, 310 F.3d at 348; *McKenzie v. E.A. Uffman & Assocs.*, 119 F.3d 358, 360 (5th Cir. 1997); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1234 (5th Cir. 1997). Both standards require that the debt collector's representations be viewed objectively from the perspective of a consumer with "below average sophistication or intelligence." *Taylor*, 103 F.3d at 1236.[1]

It is well settled that the issue whether a collection letter violates the FDCPA is a matter of law for the Court to decide. *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997); *Wilson v. Quadramed Corp.*, 225 F.3d 350, 361 (3d Cir. 2000) (finding no violation of the FDCPA as a matter of law); *Schweitzer v. Trans Union Corp.*, 136 F.3d 233, 237-38 (2d Cir. 1998) (holding that "the question of deceptiveness [under the FDCPA] is appropriate for summary judgment"). Courts have

---

[1] Because the Fifth Circuit found that the difference between these two standards is "de minimis at most," the Court opted not to choose one over the other. *Peter*, 310 F.3d at 349.

5

routinely interpreted the language of collection letters to determine whether an objective unsophisticated consumer would find them to be deceptive or misleading. *Peter*, 310 F.3d at 349-50; *Taylor*, 103 F.3d 1232 at 1237; *McKenzie*, 119 F.3d at 362; *Wilson*, 225 F.3d at 361; *Schweitzer*, 136 F.3d at 237-38.

**I.      Alleged Violations of Section 1692e(5)**

In her motion, Cash maintains that "[t]here is no doubt that the threat that [Allied] made in its [last collection letter] to [her], that it was recommending to Memorial Hermann that they refer the matter to an attorney or report the debt to credit reporting agencies, was a threat to take action that [Allied] did not intend to take." Specifically, Cash argues that Allied knew that no recommendation would be made because it was aware that the only action that would be taken would be the transfer of the account back to Memorial with a disposition code. In response, Allied contends that both Memorial's prior knowledge of the letter's content and its placement of a disposition code on the account constitute recommendations.

The Court finds that the collection letter at issue does not violate § 1692e(5) as a matter of law. Specifically, the Court finds that Allied intended to proceed precisely as the collection letter describes. Despite Cash's characterization, the language of the letter itself indicates that Allied was simply recommending to Memorial that "further actions be taken." Indeed, upon transferring Cash's account back to Memorial, Allied placed the "UR" disposition code on the account to indicate that Memorial should forward the account to a secondary debt collection agency. In the Court's view, this certainly represents a recommendation of "further action." Because Cash appears to agree that the disposition codes constitute recommendations,[2] the only remaining issue is the impact of the next sentence describing what Memorial's actions may include.

---

[2] *See* Dkt. #27, p. 3 ("The Defendant's 'notice' to Memorial Hermann of its sending the [final letter] to the consumer did not serve as its recommendation of further action - only the disposition codes did.").

6

Although Cash argues that the letter creates the impression that Allied would actually recommend referral to an attorney or a credit reporting agency, the language of the collection letter does not support her position. Rather than suggesting that Allied's recommendations would involve referring the account to an attorney or a collection agency, the next sentence in the collection letter merely notifies the reader what Memorial's "actions *may* include."[3] Under the "UR" and "JU" disposition codes, in fact, it is possible, if not likely, that the potential actions described in the collection letter could occur. That is, if "UR" is used, the account is referred to a secondary debt collection agency, which would be followed by credit bureau reporting.[4] Indeed, the Court notes that Cash's debt was subsequently reported to a credit reporting agency.[5] Moreover, the "JU" code indicates that Juristec would specifically review the account to determine whether legal action is appropriate. Thus, the statement that Memorial's further actions may include "referring th[e] matter to an attorney or reporting this debt to credit reporting agencies" was entirely accurate. Because Allied's final collection letter was accurate, the Court cannot conclude that § 1692e(5) was violated. Therefore, summary judgment on this issue in Allied's favor is appropriate.

## II.     Alleged Violations of Section 1692e(10)

In her complaint, Cash offers two reasons that the final collection letter violates § 1692e(10). First, Cash asserts that Allied used false representations and deceptive means because, despite the impression created by the letter, Allied could not have recommended to Memorial that Memorial refer the account to an attorney or a credit reporting agency. Second, Cash claims that Allied created a false sense of urgency by using the words "Final Notice" in capital letters at the top of the collection letter and stating that it "highly recommend[s]" that Cash "take this final opportunity to resolve this matter

---

[3] (Emphasis added)

[4] *See* Dkt. #28, Ex. 5, p. 24.

[5] *See id.* at p. 46; Ex. 6, p. 28.

7

before further action is taken." Specifically, Cash alleges that "[t]his language combined to create a false sense of urgency to pay the account within 10 days or the attorney that the account was referred to would take legal action."

As to Cash's allegation that Allied violated 1692e(10) by threatening to make recommendations to Memorial that it could not make, Allied maintains it did in fact make a recommendation to Memorial by placing a disposition code on the account. As explained above, the Court agrees that Allied made a recommendation of further action consistent with the process described in the letter. Regarding Cash's second reason, Allied disputes that the letter creates a false sense of urgency in the mind of the reader regarding the imminency of legal action. In particular, Allied argues that the letter does not contain a threat to take legal action, and therefore, does not constitute a violation of the FDCPA. In support of this position, Allied points to *Owsley v. Coldata, Inc.*, 114 Fed. Appx. 994, 995, 2004 WL 1690178 (5th Cir. July 29, 2004), in which the United States Court of Appeals for the Fifth Circuit affirmed a decision by this Court finding that the language of a debt collection letter did not violate § 1692e(10) of the FDCPA.

In *Owsley*, this Court considered the use of the phrase "One Last Time and It's Over" in capital letters at the top of the debt collection letter in conjunction with language informing the debtor that the account was "scheduled to be returned to [the] creditor who may [inter alia] . . . secure advice of counsel regarding appropriate steps to be taken to enforce payment." In rejecting the position that this language was deceptive because it would cause the unsophisticated consumer to believe that legal action will follow, this Court found that the body of the letter explained that "it's over" referred to the end of collection agency's efforts and the return of the account to the creditor, rather than an imminent lawsuit. In affirming, the Fifth Circuit noted that the possibility that the creditor might secure legal advice could not be construed as indicating the likelihood of litigation. *Owsley*, 114 Fed. Appx. at 995. Just as the letter in *Owsley* only established a possibility that the creditor might seek legal

8

advice, the letter sent by Allied merely establishes a possibility that the account might be referred to an attorney as part of the further actions by Memorial. The Court finds that this cannot be construed as indicating a likelihood of litigation. That is, the Court agrees with Allied's position that nothing in the letter threatens legal action by an attorney.

The prohibition of § 1692e(10), however, extends to all false representations or deceptive means, not simply to those that misrepresent the imminency of a lawsuit against the debtor. As Cash notes in her response to Allied's motion, the letter explicitly states that it represents the last opportunity for Cash to resolve the account before further action is taken. Then, the two examples that are provided by Allied as possible further actions are referring the account to an attorney or reporting the debt to a credit reporting agency, both of which could cause alarm to a debtor. Together with the title "Final Notice" in all capital letters, this language could be taken by an unsophisticated consumer as constituting the sole and final chance to pay the debt. Given that at least one of the disposition codes—in fact, the very one used with Cash's account—would only result in the account's referral to a secondary debt collection agency, any implication that the letter represented a debtor's final opportunity to resolve the debt would be false and deceptive.. *See Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488, 495-96 (5th Cir. 2004) (finding 1692e(10) violation where letter falsely created impression of a limited time offer of settlement).

Although it appears that there are no disputed facts as to this issue, the Court notes that Cash did not specifically raise this issue in her motion for partial summary judgment. Yet given the apparent absence of factual disputes, the Court finds this specific 1692e(10) claim resolvable as a matter of law and further believes that summary judgment would be proper. Before entering summary judgment *sua sponte*, however, a court should put a party on notice of its need to come forward with evidence or justification sufficient to preclude summary judgment against that party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Therefore, the Court will allow Allied time to respond

and explain why summary judgment is not appropriate on this issue.

## CONCLUSION

For the above reasons, Cash's Motion for Partial Summary Judgment is DENIED, and Allied's Motion for Summary Judgment is GRANTED in part and DENIED in part. Furthermore, Allied shall be allowed to file within 10 (ten) days from the date of entry of this order a response indicating why summary judgment would be inappropriate as to Cash's § 1692e(10) claim. Moreover, this case is hereby removed from the May 27, 2005 docket call schedule. A new trial setting will be scheduled pending the outcome of the issue raised above.

It is so ORDERED.

Signed this 18th day of May, 2005.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE